UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-11028-RWZ

EDWARD F. GRODEN, AS EXECUTIVE DIRECTOR OF THE NEW ENGLAND
TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND

v.

N&D TRANSPORTATION COMPANY, INC., *et al.*

MEMORANDUM OF DECISION

March 29, 2019

ZOBEL, S. D.J.

I.    **Introduction**

Plaintiff Edward F. Groden, Executive Director of the New England Teamsters and Trucking Industry Pension Fund ("Fund"), seeks to collect a $1.5 million default judgment for ERISA withdrawal liability entered in 2012 against D&N Transportation, Inc. ("D&N"). Langone v. D&N Transp. Co., Inc., No. 12-cv-10646-NMG (D. Mass. Sept. 24, 2012) (ECF No. 14). Unable to recover from D&N, the Fund initiated this case to recover from N&D Transportation Company, Inc. ("N&D"), the amount owed on the ground that N&D is the alter ego of D&N and thus equally liable for the judgment. Plaintiff has moved for summary judgment as to N&D (Docket # 131), and to strike certain affidavits submitted by defendants incident thereto (Docket # 142).

1

## II. Facts[1] and Procedural History

In 1974, husband and wife Laurent and Elizabeth Duhamel founded D&N, a trucking company. As a signatory to one or more collective bargaining agreements with Teamsters Local Union No. 251, D&N was bound to make contributions to the plaintiff Fund on behalf of certain of its employees. The Fund is a multi-employer pension fund that enables otherwise-competing trucking companies to jointly contribute on behalf of their union employees, thus guaranteeing stable employment benefits on defined terms over the course of the employee's career.

On December 11, 1991, Laurent and Elizabeth's children——David Duhamel and Nancy Belsito (née Duhamel)—— founded N&D and entered the trucking industry on their own. Unlike their parent's company, N&D has never employed members of any labor union and it continues to operate to the present day.

D&N and N&D co-existed for almost twenty years, during which time the two companies worked out of the same office space at 100 Industrial Drive in North Smithfield, Rhode Island, and used the same central phone number.

But on March 31, 2011, D&N ceased operations, triggering the withdrawal liability at issue in this case. By closing down, D&N terminated its obligation to contribute to the Fund on a forward-looking basis, but became obligated to pay an exit fee for withdrawing from the Fund. 29 U.S.C. § 1381.

On August 9, 2011, the Fund sent to D&N a demand for payment of the withdrawal liability. After failing to receive the first scheduled installment, the Fund sent

---

[1] These facts are derived from the parties' statements of undisputed/material facts. Docket ## 133 and 141.

D&N a notice of default on October 14, 2011. Because D&N remained delinquent, the Fund sued to collect the unpaid withdrawal liability and on September 24, 2012, secured a default judgment against D&N in the amount of $1,505,186.18. Langone v. D&N Transp. Co., Inc., No. 12-cv-10646-NMG (D. Mass. Sept. 24, 2012) (ECF No. 14). Unable to collect from D&N for more than a year, the Fund initiated the instant action to satisfy its judgment from D&N's alleged alter ego, N&D.

In addition to the primary alter ego liability claim against N&D, the first amended complaint included alter ego and fraudulent transfer claims against Laurent and Elizabeth Duhamel personally, as well as "reach and apply" and alter ego claims against defendant JED Realty–a real estate company owned by David Duhamel.[2] In June 2015, plaintiff sought leave to file a second amended complaint to add several defendants it alleged were alter egos of the existing defendants. Around the same time, all defendants filed motions to dismiss the first amended complaint. This court granted the motions to dismiss for want of any description of defendants' (as opposed to non-party D&N's) underlying ERISA violation. The court also denied permission to file the requested second amended complaint, ruling that "the chain is already broken" by the failure of the alter ego claim against N&D. Id. Thus, adding additional defendants as derivative alter egos of N&D would be futile. Id. The court subsequently denied plaintiff's motion for relief from and/or to amend the judgment, because subject-matter jurisdiction would still be lacking even if plaintiff amended the complaint to allege

---

[2] Some of plaintiff's claims focus on a real estate transaction involving the ownership and transfer of the North Smithfield property where both D&N and N&D operated. The motions before the court do not require parsing the details of the real estate transaction.

3

that N&D was the alter ego of D&N at the time of D&N's ERISA violation.

Plaintiff appealed and the First Circuit determined that there was subject matter jurisdiction over the Fund's claims against N&D and remanded the case to this court. It also vacated the denial of plaintiff's motion for relief from and/or to amend the judgment. Although the Court of Appeals found subject matter jurisdiction over the claims against N&D, it reserved judgment about whether this court should extend supplemental jurisdiction over plaintiff's other claims against derivative alter ego defendants like JED Realty.

On remand, this court allowed plaintiff's motion to file a third amended complaint, which added the same defendants plaintiff had sought to add earlier. All defendants subsequently filed motions to dismiss that complaint. At the hearing on these motions, counsel agreed that the claims against all defendants might be resolved more efficiently if the Fund's claim against N&D were to be adjudicated first on plaintiff's motion for summary judgment. Accordingly, this court denied N&D's motion to dismiss, reserved ruling on the remaining defendants' motions to dismiss, and instructed the parties to brief summary judgment as to N&D only. Given the First Circuit's decision that this court has jurisdiction over plaintiff's claim against N&D, the only issue on summary judgment is whether on undisputed facts N&D is or was D&N's alter ego such that N&D may be liable for the default judgment.

### III.   Plaintiff's Motion for Summary Judgment

#### A.   Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' for purposes of summary judgment if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' and a 'material fact' is one which 'might affect the outcome of the suit under the governing law.'" Poulis-Minott v. Smith, 388 F.3d 354, 363 (1st Cir. 2004) (quoting Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 90 (1st Cir. 1993)). "In order to defeat a motion for summary judgment, the nonmovant may not rest upon some combination of conclusory allegations, improbable inferences, and unsupported speculation, but must instead present definite, competent evidence to rebut the motion." Advanced Flexible Circuits, Inc. v. GE Sensing & Inspection Techs. GmbH, 781 F.3d 510, 516 (1st Cir. 2015). The court must "view the record in the light most favorable to the party opposing the motion, accepting all reasonable inferences favoring that party." Cont'l Cas. Co. v. Canadian Universal Ins. Co., 924 F.2d 370, 373 (1st Cir. 1991).

### B. Alter Ego Doctrine

In the context of labor relations, the alter ego doctrine exists to "prevent employers from evading their obligations under labor laws and collective bargaining agreements." Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp., 139 F.3d 304, 307 (1st Cir. 1998). Most commonly alter ego liability attaches to a successor company that is "merely a disguised continuance of the old employer," though companies that coexist in parallel can be alter egos as well. C.E.K. Indus. Mech. Contractors, Inc. v. N.L.R.B., 921 F.2d 350, 354 (1st Cir. 1990) (quoting Southport Petroleum Co. v. N.L.R.B., 315 U.S. 100, 106 (1942)). Alter egos are treated "interchangeably for purposes of applying labor laws," so that the labor liabilities of one company are shared by——and equally enforceable against——its alter ego. N.L.R.B. v.

5

Hosp. San Rafael, Inc., 42 F.3d 45, 50 (1st Cir. 1994).

In deciding alter ego status, courts in this circuit consider several factors: "continuity of ownership, similarity of the two companies in relation to management, business purpose, operation, equipment, customers, supervision, and anti-union animus—i.e., 'whether the alleged alter ego entity was created and maintained in order to avoid labor obligations.'" Belmont, 139 F.3d at 308 (quoting Hosp. San Rafael, 42 F.3d at 50). No one factor is necessary or dispositive. Id.

**C.     Analysis**

The key inquiry is whether, on March 31, 2011, when D&N went out of business, N&D did then or soon thereafter assume significant portions of D&N's line of business, customers or employees such that N&D could be considered interchangeable with D&N. Because there are disputed questions of material fact surrounding the relationship between the two companies at the time D&N went out of business, plaintiff's motion for summary judgment is denied. Although D&N operated exclusively as a "less than truckload" ("LTL") interline carrier and N&D initially focused on full truckload, long-haul motor freight, the record does not clearly show whether and when N&D began offering LTL service, and whether, if it did so, N&D acquired D&N's equipment, employees or customers or otherwise assumed D&N's identity.

With these disputed questions of fact regarding operational and managerial interrelation, D&N and N&D cannot be deemed alter egos at the summary judgment stage. See Belmont, 139 F.3d at 309 (finding alter ego on summary judgment where both companies were in the construction business, were "owned, operated and managed by the same three men," worked for "the same client" and shared a building,

"a large number of employees," and equipment); Langone v. C. Walsh Inc., 864 F.Supp. 233, 238 (D. Mass 1994) (finding alter ego on summary judgment where the "business purpose is identical," "the similarity in operations is substantial," the companies "shared names, managers and trucks apparently with little differentiation between the two operations," "the owners worked closely together," the companies shared "equipment, resources and property," and there was an identifiable anti-union animus).

## IV. Conclusion

Because there are multiple open questions of material fact relating to the relationship and operation of D&N and N&D at the time D&N went out of business, plaintiff's motion for summary judgment (Docket #131) is denied. Plaintiff's motion to strike portions of defendant's affidavits submitted in opposition (Docket # 142) is denied because the cited excerpts are inconsequential to the court's decision.

_____March 29, 2019_____  _____/s/Rya W. Zobel_____
DATE  RYA W. ZOBEL
SENIOR UNITED STATES DISTRICT JUDGE